

JOHN J. FLOOD
CLERK
(618) 242-3120

STATE OF ILLINOIS
APPELLATE COURT
FIFTH DISTRICT
14TH & MAIN STREETS
P.O. Box 867
MT. VERNON, IL 62864-0018

March 30, 2010

Hon. Matt Melucci, Circuit Clerk
Madison County Courthouse
155 N. Main Street
Edwardsville, IL 62025

      RE:   *Kircher, Carl & Brockway, Robert v. Putnam Funds Trust, et al.*
            Madison County No. 03-L-1255
            Appellate Court No. 5-08-0260

Dear Clerk:

      Enclosed please find the mandate of the Appellate Court in the above-entitled cause.

      Under separate cover, the Record on Appeal is being returned to your office in the above-entitled cause. Please sign the receipt which is enclosed with the record and return the receipt to this office.

                              Yours very truly,

                              John J. Flood, Clerk

JJF/jmb
Enclo.

cc:    Charles L. Joley         Stephen M. Tillery
       James R. Carroll        Klint L. Bruno
       Rebecca R. Jackson     Robert L. King
       John D. Donovan, Jr.    George A. Zelcs
       Jeffrey B. Maletta       Gary A. Meadows
       Laura Steinberg         Mark A. Perry

**Exhibit A**

NO. 5-08-0260
Term, 2009

STATE OF ILLINOIS, APPELLATE COURT, FIFTH DISTRICT, ss.

AT AN APPELLATE COURT, begun and held at Mt. Vernon, on the First Friday, in the month of January, in the year of our Lord, two thousand nine, the same being the 2nd day of January in the year of our Lord, two thousand nine.

| Hon. | MELISSA A. CHAPMAN, | Justice. |
|---|---|---|
| Hon. | STEPHEN L. SPOMER, | Justice. |
| Hon. | BRUCE D. STEWART, | Justice. |
| Hon. | LOUIS E. COSTA, | Clerk. |

BE IT REMEMBERED that on the 6th day of January, 2010, the final judgment of the Appellate Court was entered of record as follows:

| | |
|---|---|
| CARL KIRCHER and ROBERT BROCKWAY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>PUTNAM FUNDS TRUST, PUTNAM INVESTMENT MANAGEMENT, LLC, EVERGREEN INTERNATIONAL TRUST, and EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC,<br><br>Defendants-Appellants. | ) Appeal from the<br>) Circuit Court of<br>) Madison County.<br>)<br>)<br>)<br>)<br>) No. 03-L-1255<br>)<br>)<br>)<br>)<br>)<br>)<br>) Honorable<br>) Barbara J. Crowder,<br>) Judge, presiding. |

It is the decision of this Court that the judgment on appeal be FIRST CERTIFIED QUESTION ANSWERED; ORDER REVERSED; CAUSE REMANDED WITH DIRECTIONS. And it is further considered by the Court, that costs of appeal shall be taxed as provided by law.

As Clerk of the Appellate Court, Fifth District of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order of the said Appellate Court, in the above-entitled cause of record in my office.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this 30th day of March, 2010.

_____
Clerk of the Appellate Court.

NOTICE
The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0260

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

FILED
JAN 0 6 2010
JOHN J. FLOOD
CLERK APPELLATE COURT, 5TH DIST

| | |
|---|---|
| CARL KIRCHER and ROBERT BROCKWAY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> PUTNAM FUNDS TRUST, PUTNAM INVESTMENT MANAGEMENT, LLC, EVERGREEN INTERNATIONAL TRUST, and EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC, <br><br> Defendants-Appellants. | ) Appeal from the <br> ) Circuit Court of <br> ) Madison County. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 03-L-1255 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Honorable <br> ) Barbara J. Crowder, <br> ) Judge, presiding. |

JUSTICE SPOMER delivered the opinion of the court:

The defendants, Putnam Funds Trust, Putnam Investment Management, LLC, Evergreen International Trust, and Evergreen Investment Management Company, LLC, appeal, pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308), from a December 20, 2007, order of the circuit court of Madison County, which denied their motion for a judgment on the pleadings with respect to the class action complaint filed by Carl Kircher and Robert Brockway, individually and on behalf of all others similarly situated. The certified questions on appeal are as follows:

    1. Does the Securities Litigation Uniform Standards Act of 1998 (the Securities Litigation Act) (15 U.S.C. §78bb(f)(1) (2006)) preclude this action?

    2. Does the Securities Litigation Act preclude a holder of mutual funds from pursuing a putative class action in state court for the negligent management of funds?

1

3. Does the Securities Litigation Act preclude a holder of mutual funds from pursuing a putative class action in state court for the reckless (or willful and wanton) management of funds?

4. Does the Securities Litigation Act preclude a state law claim for a negligent failure to prevent market timing?

5. Does the Securities Litigation Act preclude a state law claim for a reckless (or willful and wanton) failure to prevent market timing?

For the reasons that follow, we answer the first certified question in the affirmative, and we decline to answer the remaining certified questions. See *People ex rel. Board of Trustees of Chicago State University v. Siemens Building Technologies, Inc.*, 387 Ill. App. 3d 606, 611 (2008) (the appellate court should refrain from answering certified questions that have no practical effect). Accordingly, we reverse the order of the circuit court that denied the defendants' motion for a judgment on the pleadings, and we remand with directions that the circuit court dismiss this action.

FACTS

On September 16, 2003, the plaintiffs, as investors, filed a class action complaint in the circuit court of Madison County against the defendants, who are international mutual fund trusts and their respective investment advisers. According to the complaint, open-end mutual funds such as the defendants' funds have been tremendously successful in convincing investors such as the plaintiffs to hold their fund shares by urging investors to invest for the long term and by effectively marketing the various advantages of long-term ownership of funds, including professional management, diversification, and liquidity. The complaint alleges that the defendants sell these open-end mutual funds to investors such as the plaintiffs at a price based upon the net asset value (NAV) per share plus applicable sales charges. Investors in shares may redeem their shares at the NAV of the shares less any

redemption charges. The defendants set the NAV of the mutual funds by deducting the fund liabilities from the total assets of the portfolio and then dividing by the number of outstanding shares. Because the sales and redemption prices are based upon the NAV, which in turn depends upon the fluctuating value of the funds' underlying portfolio of securities, the defendants recalculate the fund NAV once every business day at the close of trading on the New York Stock Exchange at 4 p.m. Eastern Standard Time. The defendants report the NAV to the National Association of Securities Dealers for public distribution.

According to the complaint, the defendants use the last trade price in the home market of each of the securities in its portfolio to value its underlying assets for purposes of setting the NAV, and a significant portion of the securities in the defendants' portfolios are foreign securities. The home markets of these foreign securities include London, Paris, Frankfurt, Moscow, Singapore, Kuala Lumpur, Hong Kong, Taipei, Tokyo, and Sydney. As alleged, these markets are located in time zones that are 5 hours to 15 hours ahead of Eastern Standard Time. The complaint alleges that studies of world financial markets have established associations between value movements in the United States market and value movements in foreign markets. If the United States market experiences an upward or downward movement in values, it can be predicted that the Asian and European markets will also move upward or downward, as the case may be, once trading begins their next day.

The complaint alleges that due to the foregoing, the closing prices of the foreign securities in the defendants' portfolios may not reflect current market values at the time the defendants set their fund NAV. In order to accurately reflect the NAV, the defendants need to make appropriate adjustments to the closing prices of the foreign securities. The complaint alleges that since many of the home markets for the foreign securities in the defendants' portfolios are last traded hours before the setting of the fund NAV, the closing prices the defendants use to calculate the NAV are stale by anywhere from 2 to 14 hours and

do not reflect relevant information–available subsequent to the foreign security's last trade–that will affect the value of the security. The complaint alleges that despite knowledge of the United States market result, the above-stated correlations, and the resulting stale price of the foreign securities in the underlying portfolio, the defendants do not make any value adjustment to the portfolio's foreign securities prior to calculating the fund NAV and setting the share price every business day.

The plaintiffs contend that by failing to make daily adjustments based upon positive correlations between upward movements and downward movements in United States and foreign markets and by choosing to use stale prices in valuing their fund shares and setting their daily NAVs, the defendants have exposed them, as long-term shareholders, to market-timing traders who regularly purchase and redeem the defendants' shares as a part of a profitable trading strategy. The excess profits that are obtained by market-timing traders who take advantage of the stale pricing of the defendants' shares come at the expense of fellow shareholders such as the plaintiffs, who are nontrading, long-term, "buy and hold" investors. These expenses come in the form of increased trading and transaction costs; a disruption of planned investment strategies; forced and unplanned portfolio turnover, including the liquidation of investments to meet market-timer redemption requests; lost opportunity costs; asset swings that negatively impact fund operations and performance; and the ability of the fund to provide a maximized return to long-term shareholders.

Counts I and III allege that the defendants knew or were negligent in not knowing the aforementioned information and, as a result, were negligent in failing to properly evaluate on a daily basis whether a significant event affecting the value of their portfolios had occurred after the foreign-trading markets for those securities had closed but before the defendants calculated the NAV and share prices, in failing to implement portfolio valuation and share-pricing policies and procedures, and in allowing portfolio valuation and share-

pricing policies and procedures which benefited market-timing traders at the expense of the plaintiffs as long-term shareholders. Counts II and IV allege that the defendants were guilty of a willful and wanton breach of their duties to the plaintiffs as long-term shareholders by acting with utter indifference and conscious disregard for the plaintiffs' investments and by failing to know and implement applicable rules and regulations concerning the calculation of the NAV.

On October 23, 2003, the defendants filed a notice of removal to the United States District Court for the Southern District of Illinois. In the notice of removal, the defendants contended, *inter alia*, that this action was removable under the Securities Litigation Act (15 U.S.C. §78bb(f)(2) (2006)) because the Securities Litigation Act provides that a "covered class action" alleging fraud in connection with the purchase of "covered securities," as those terms are defined by the Securities Litigation Act, is removable. On January 27, 2004, the district court entered an order remanding this cause to the circuit court of Madison County on the plaintiffs' motion, holding that the plaintiffs' claims are not claims made "in connection with the purchase or sale of a covered security" as required for the application of the Securities Litigation Act. The district court held, *inter alia*, that the plaintiffs' claims were made in connection with their status as holders of securities, rather than as purchasers. The defendants appealed the district court's remand order on February 26, 2004. Appeals were taken from remand orders in several other, similar cases, which the United States Court of Appeals for the Seventh Circuit (the Seventh Circuit) consolidated with this action (the Kircher appeals).

Thereafter, the Seventh Circuit issued two published opinions in the Kircher appeals. In the first, issued on June 29, 2004, the Seventh Circuit held that it had appellate jurisdiction to review the district court's remand order despite the general bar on the appealability of remand orders set forth in the federal judicial code (28 U.S.C. §1447(d)

(2000)). *Kircher v. Putnam Funds Trust*, 373 F.3d 847 (7th Cir. 2004) (*Kircher I*). In the second published opinion, issued on April 5, 2005, the Seventh Circuit rejected the argument that the Securities Litigation Act does not apply to so-called "holder" claims, and it reversed the remand order. *Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005) (*Kircher II*).

The Seventh Circuit's *Kircher II* ruling on the "holder" issue was in direct conflict with a decision issued three months earlier by the United States Court of Appeals for the Second Circuit (the Second Circuit). *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005). On September 27, 2005, the United States Supreme Court granted *certiorari* in *Dabit* to resolve the split. In its subsequent opinion, issued on March 21, 2006, the Supreme Court held, as did the Seventh Circuit in *Kircher II*, that, for purposes of the Securities Litigation Act, the distinction between the holders of securities and the purchasers or sellers of securities is irrelevant and that the identity of the plaintiffs does not determine whether the complaint alleges fraud "in connection with the purchase or sale" of securities. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 88-89, 164 L. Ed. 2d 179, 194, 126 S. Ct. 1503, 1515 (2006).

Following the Second Circuit's decision in *Dabit*, the plaintiffs filed a motion for leave to file an amended complaint in the district court, and they filed a memorandum of law in support thereof, in which they argued that their allegations of misconduct amounted to the negligent mismanagement of funds, and not fraud, and therefore fell outside of the Securities Litigation Act's terms. Accordingly, the plaintiffs argued that the case should be remanded to the circuit court of Madison County. On May 27, 2005, the district court rejected the plaintiffs' argument and entered an order denying the motion for leave to file an amended complaint because it did not provide a new basis for a remand. The district court also vacated its earlier remand order and dismissed all the plaintiffs' claims with prejudice

6

pursuant to the Securities Litigation Act. On June 15, 2006, the Supreme Court, on review of *Kircher I*, issued its opinion holding that the Seventh Circuit did not have jurisdiction to review the district court's January 2004 remand order, and it ordered the Seventh Circuit to dismiss the Kircher appeals for a lack of jurisdiction. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 648, 165 L. Ed. 2d 92, 107, 126 S. Ct. 2145, 2157 (2006) (*Kircher III*). Accordingly, on October 16, 2006, the Seventh Circuit entered an order dismissing the Kircher appeals. *In re Mutual Fund Market-Timing Litigation*, 468 F.3d 439, 444 (7th Cir. 2006) (*Kircher IV*). As a result, the district court's January 27, 2004, remand order remained intact, the district court's May and June 2005 orders were null and void, and the circuit court of Madison County had jurisdiction over this cause.

On December 6, 2006, the defendants filed another notice of removal, based on *Dabit*. Later, the plaintiffs filed two alternative motions to remand, the first based on the untimeliness of the notice of removal pursuant to the federal judicial code (28 U.S.C. §1447(c) (2006)) and the second again arguing that the Securities Litigation Act does not apply to the plaintiffs' claims because they are based on the negligent management of funds rather than a misrepresentation. The district court entered an unpublished order on July 17, 2007, explaining that the proceedings on the motion to remand had been stayed until, *inter alia*, the district court issued its opinion in *Potter v. Janus Investment Fund*, 483 F. Supp. 2d 692 (S.D. Ill. 2007). *Kircher v. Putnam Funds Trust*, No. 06-cv-939-DRH (S.D. Ill. 2007) (unpublished order) (*Kircher V*). In *Potter*, Judge Herndon held that where the "gravamen" of a plaintiff's complaint is that negligence and breaches of fiduciary duty by defendants have allowed market-timing traders to engage in a pattern of market-timing trades in the shares of a mutual fund, to the detriment of long-term shareholders, the fact that the plaintiffs have chosen to characterize their claims in terms of negligence and breach of fiduciary duty under state law is not enough to avoid the preclusive effect of the Securities

7

Litigation Act. 483 F. Supp. 2d at 702. Based on *Potter*, the district court denied the plaintiffs' motion to remand based on the inapplicability of the Securities Litigation Act. However, as in *Potter*, the district court granted the motion to remand based on the untimeliness of the notice of removal.

Following the remand, the defendants filed a motion for a judgment on the pleadings in the circuit court of Madison County on September 26, 2007. In that motion, the defendants argued that *Potter*, as incorporated into *Kircher V*, is the law of the case. Alternatively, the defendants argued that they are entitled to a judgment on the pleadings because the plaintiffs' claims are barred by the Securities Litigation Act. A hearing was held on the defendants' motion on October 23, 2007. After taking the matter under advisement, the circuit court entered an order on December 20, 2007, which denied the defendants' motion for a judgment on the pleadings. On January 9, 2008, the defendants filed a motion requesting that the circuit court enter an order certifying the question of whether the complaint is precluded by the Securities Litigation Act for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308). After a hearing on March 17, 2008, the circuit court took the matter under advisement and entered an order on May 2, 2008, certifying the above-stated questions for interlocutory appeal. On June 10, 2008, this court granted the defendants' timely application for leave to appeal.

ANALYSIS

The first certified question on appeal is whether the Securities Litigation Act precludes this action. Because a certified question, by definition, presents a question of law, our standard of review is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007). The Securities Litigation Act provides, in pertinent part, as follows:

> "No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private

party alleging–

> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. §78bb(f)(1) (2006).

As recognized by the Supreme Court, the Securities Litigation Act does not actually preempt any state law cause of action but simply denies plaintiffs the right to use the class action device to vindicate certain claims. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87, 164 L. Ed. 2d 179, 193, 126 S. Ct. 1503, 1514 (2006). Under the terms of the Securities Litigation Act, "an action will be dismissed *** if it is (1) a 'covered class action,' (2) that is based on a state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) 'in connection with' the purchase or sale of a covered security, and all of these elements must be present for preclusion to apply." *Potter*, 483 F. Supp. 2d at 696. Here, as in *Potter*, there is no dispute that the plaintiffs' claims are based on state law and are a "covered class action," in that they seek damages on behalf of more than 50 people or prospective class members. See 15 U.S.C. §77p(f)(2) (2006). In addition, as stated above, *Dabit* made clear that state law class actions on behalf of holders of covered securities are deemed to be "in connection with" purchases or sales for purposes of the Securities Litigation Act. 547 U.S. at 89, 164 L. Ed. 2d at 194, 126 S. Ct. at 1515. Accordingly, if the plaintiffs' claims assert a misrepresentation or omission of material fact or the use of a manipulative device or contrivance within the meaning of the Securities Litigation Act, then we must answer the first certified question in the affirmative.

In *Potter*, which was cited in *Kircher V* as authority for the district court's denial of

the plaintiffs' motion to remand based on a lack of subject matter jurisdiction, the district court rejected the plaintiffs' argument that their claims are outside the scope of the Securities Litigation Act because they do not allege any intent to deceive on the part of the defendants. *Potter*, 483 F. Supp. 2d at 698. By contrasting the Securities Litigation Act's language with that of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b) (2006)), the district court concluded that Congress did not intend for *scienter* to be a requirement for Securities Litigation Act preclusion. *Potter*, 483 F. Supp. 2d at 698. The district court concluded, "Under [the Securities Litigation Act], '[t]he element of a misrepresentation or omission of a material fact is satisfied when ... a plaintiff alleges a misrepresentation ... concerning the value of the securities ... sold or the consideration received in return.' " *Potter*, 483 F. Supp. 2d at 699 (quoting *Araujo v. John Hancock Life Insurance Co.*, 206 F. Supp. 2d 377, 382 (E.D.N.Y. 2002)).

Assuming, without deciding, that the *Potter* decision, as incorporated into *Kircher V*, is not law of the case, we nevertheless find the district court's interpretation of the Securities Litigation Act to be persuasive and choose to follow it. We recognize that in similar cases in the district court, although unpublished and of no precedential value, Judges Murphy and Reagan have also found Securities Litigation Act preclusion, and the Seventh Circuit affirmed Judge Murphy's decision and the Supreme Court denied *certiorari*. *Bradfisch v. Templeton Funds, Inc.*, 179 Fed. Appx. 973 (7th Cir. 2006) (unpublished order), *cert. denied*, 549 U.S. 1206, 167 L. Ed. 2d 76, 127 S. Ct. 1261 (2007); *Spurgeon v. Pacific Life Insurance Co.*, Nos. 06-cv-983-MJR, 06-cv-925-MJR (S.D. Ill. 2007) (unpublished order). In addition, other federal courts have cited *Potter* with approval and have relied on it in concluding that other purported state law securities class actions were precluded by the Securities Litigation Act. *E.g., Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285-86 (10th Cir. 2008).

In addition, we find that the broad reading of the Securities Litigation Act in the *Potter* decision is in line with the Supreme Court's pronouncement in *Dabit* that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Dabit*, 547 U.S. at 78, 164 L. Ed. 2d at 187, 126 S. Ct. at 1509. Although the plaintiffs argue, and the circuit court ruled, that the complaint is outside the scope of the Securities Litigation Act because it alleges the negligent and willful and wanton mismanagement of the funds, we find that the plaintiffs' allegations of stale pricing are, in essence, allegations of a negligent or willful and wanton misrepresentation of value. We note that this holding is in line with the federal multidistrict litigation court, which also dismissed, as precluded by the Securities Litigation Act, the same type of complaint of common law negligence based on stale pricing. *In re Mutual Funds Investment Litigation*, 437 F. Supp. 2d 439, 443 (D. Md. 2006), *aff'd*, 309 Fed. Appx. 722 (4th Cir. 2009) (unpublished decision). We reject the plaintiffs' argument that because the market-timing traders place their orders for the shares before the day's price is published, the misrepresentation is not the basis of the plaintiffs' injury. It is precisely this timing that allegedly allows the market timers to profit at the expense of the plaintiffs.

We also find, as did the district court in *Potter*, that the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose to the plaintiffs their method of calculating the NAV and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors. If the defendants had disclosed to the plaintiffs the fact that mutual fund shares are valued only once a day and that this once-a-day valuation creates opportunities for market-timing arbitrage, or if the defendants had stated in their prospectuses or otherwise disclosed to investors that a daily valuation left the defendants' funds exposed to short-swing trading strategies, the plaintiffs would be unable to claim that the negligent or willful and wanton valuation of the funds caused them damage.

11

See *Potter*, 483 F. Supp. 2d at 699. For these reasons, we find that the plaintiffs' complaint alleges a misrepresentation or omission of material fact for purposes of Securities Litigation Act preclusion.

As explained in *Potter*, further support for our decision can be found in the nature of the injury alleged by the plaintiffs to be the result of the defendants' negligent valuation of the funds. 483 F. Supp. 2d at 700. The plaintiffs attempt to characterize their complaint to allege a dilution of the value of mutual fund shares through a mismanagement of the funds, but state and federal law requires that claims for an injury to a mutual fund must be brought derivatively by the shareholders, rather than directly. *Potter*, 483 F. Supp. 2d at 700-01 (citing *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000)). We agree with the district court's conclusion in *Potter* that the fact that the Securities Litigation Act expressly exempts state law class actions which are brought as derivative actions indicates that it was designed to extend broadly to actions in which the alleged mismanagement of a fund had caused a direct injury to the fund and only an indirect injury to the shareholders. 483 F. Supp. 2d at 698. We therefore hold, as did the district court in *Potter*, that those claims must be within the scope of the Securities Litigation Act unless brought derivatively on behalf of the funds after a demand by the shareholders on corporate officers. 483 F. Supp. 2d at 700.

Finally, we agree with the district court's statement in *Potter* that both *Dabit* and the language of the Securities Litigation Act make it clear that preclusion is not limited to situations where misrepresentations or omissions are made by the defendant. *Potter*, 483 F. Supp. 2d at 702. Rather, preclusion under the Securities Litigation Act also applies when class action claims are made under state law in connection with the purchases or sales of covered securities that coincide with alleged misrepresentations or omissions of fact by third parties. *Potter*, 483 F. Supp. 2d at 702. Here, it is conceivable that the plaintiffs' state law negligence claims could coincide with alleged securities fraud, because Rule 10b-5 of the

12

Securities Exchange Commission (17 C.F.R. §240.10b-5 (2007)) prohibits market timing which " 'is engaged in by favored market insiders at the expense of long-term mutual fund investors from whom it is concealed and who have a right to rely upon its prevention by fund advisers' and managers' good[-]faith performance of their fiduciary obligations.' " *Potter*, 483 F. Supp. 2d at 702 (quoting *In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 845, 856 (D. Md. 2005)). The plaintiffs' claims that the defendants' negligent and willful and wanton conduct exposed them to market timers would include those market timers who engage in the market timing that is prohibited by Rule 10b-5. For all of these reasons, we find that the plaintiffs' class action complaint is precluded by the Securities Litigation Act.

## CONCLUSION

For the foregoing reasons, we answer the first certified question in the affirmative. We therefore reverse the order of the circuit court that denied the defendants' motion for a judgment on the pleadings, and we remand with directions that the circuit court dismiss this action. We decline to answer the remaining certified questions because to answer them would have no practical effect on this litigation.

First certified question answered; order reversed; cause remanded with directions.

CHAPMAN and STEWART, JJ., concur.